Bernhardt vs. The State.

BERNHARDT, Plaintiff in error, vs. THE STATE, Defendant in error.

*February 29 — March 22, 1892.*

CRIMINAL LAW AND PRACTICE. (*1*) *Pleading: Information charging murder in first degree.* (*2–5*) *Instructions to jury: Degrees of murder: Intoxication.* (*6*) *Good character.* (*7*) *Misconduct of jury: Reading statutes.*

1. An information for murder which, after striking out surplusage and redundant matter, charges that defendant with a club inflicted a mortal wound upon the body of one S., with a premeditated design to effect the death of said S., from which mortal wound he did die; and that defendant, from premeditated design to effect the death of said S., him, the said S., did feloniously slay, kill, and murder — is *held* to charge the crime of murder in the first degree.

2. On the trial upon such information, where the court instructed the jury as to the various degrees of homicide in the language of the statute, it was not error to refuse to give a special instruction on the subject of murder in the third degree.

3. A criticism of the charge as giving undue prominence to murder in the first degree, is *held* to be unwarranted.

4. The court charged the jury that if they should find that defendant, at the time he struck the blow, was in such a condition from the use of spirituous liquors that he was incapable of forming an intent to kill, then they might consider the question of intoxication; that the question was, in short, Was he at the time in such a condition mentally as to be incapable of forming this premeditated design to effect the death? *Held,* that there was no error in refusing to charge: "If you have a reasonable doubt whether at the time of the killing the defendant had sufficient capacity to deliberately think upon and rationally to determine so to kill, you cannot find him guilty of murder in the first degree, although such inability was the result of intemperance."

5. Where no particular instructions on a subject are requested, it is not error to refuse to instruct the jury upon that subject, unless it was either necessary or the duty of the court to instruct them with respect thereto.

6. The office of good character, in criminal cases, is not to raise doubts when the facts are clearly and positively proven, but to solve doubts of proof.

7. For the jury, without the knowledge of the court, to have in their possession the Revised Statutes, and to read therefrom the provisions concerning murder in its several degrees and the penalties thereof, and to discuss their verdict in connection with such provisions, is not such misconduct as will work a reversal.

ERROR to the Circuit Court for *Waukesha* County.

The plaintiff in error was convicted of murder in the first degree. The information was as follows, omitting title, etc.:

" I, Alexander Cook, district attorney for said county, hereby inform the court that on the third day of May, in the year 1891, to wit, in the night time after the hour of midnight of the previous day, at said county, *John Bernhardt* did with force and arms wilfully, feloniously, and of his malice aforethought, with one club, stake, or billet of wood in the hands of him, the said *John Bernhardt*, then and there had and held, in and upon the body, face, and head of one Henry Schley, a human being, then and there being, did strike one mortal blow, and by such striking of the said blow then and there did inflict one mortal wound in and upon the body, face, and head of him, the said Henry Schley, with premeditated design to effect the death of him, the said Henry Schley, of which said mortal wound he, the said Henry Schley, immediately did die.

" And so I, the said district attorney, do hereby inform the court that the said *John Bernhardt*, at the time and place aforesaid, in the manner and form aforesaid, from premeditated design to effect the death of him, the said Henry Schley, wilfully, feloniously, and of his malice aforethought, from premeditated design to effect the death of him, the said Henry Schley, him, the said Henry Schley, did feloniously slay, kill, and murder, against the peace and dignity of the state of Wisconsin."

The trial court refused to give to the jury the following instruction, requested by defendant, on the subject of murder in the third degree: "If you find from the evidence

that at the time of the killing of Schley the defendant intended to commit the crime of robbery from the person of Schley, and that the defendant 'struck the blow or blows which killed Schley without any desire or intent to kill him, then the killing is murder in the third degree, and you must so find by your verdict. You are not required to so find beyond a reasonable doubt, but you must be satisfied from the evidence, beyond a reasonable doubt, that it is not so."

The following instruction, requested by defendant, was also refused: "You are instructed that evidence of previous good character is competent evidence in favor of a party accused of crime, as tending to show that he would not be likely to commit the crime alleged against him. And in this case, if you believe from the evidence that prior to the commission of the alleged crime the defendant had always borne a good character, as being a good, peaceable, and law-abiding citizen, among his acquaintances and in the neighborhood where he lived, then there is a fact proper to be considered by you in determining whether he intended to kill Schley." The court charged the jury on this subject that evidence in regard to the good character of the defendant "is always receivable in a court of justice, and it oft-times forms a very important part of the testimony in the case. In a doubtful case,— a case depending entirely upon circumstantial evidence,— sometimes good character of the defendant will turn the scale; but where the evidence is clear and positive it is not of so much weight in a case; still it is entitled to be given. In this case you may consider the good character of the defendant ,and give it such weight as you think [it should have], in view of the circumstances of the case."

Other facts will sufficiently appear from the opinion.

*V. W. Seely,* for the plaintiff in error.

The *Attorney General,* and *J. M. Clancey,* Assistant Attorney General, for the defendant in error.

Bernhardt vs. The State.

ORTON, J. The plaintiff in error was tried and convicted in the circuit court of the county of Waukesha of the crime of murder in the first degree for the killing of one Henry Schley on the 3d day of May, 1891. The facts are not material to any error assigned. The assignments of error will be disposed of in their order.

1. That the information does not charge the crime of murder in the first degree. Murder in the first degree is "the killing of a human being when perpetrated from a premeditated design to effect the death of the person killed or of any human being." Sec. 4338, R. S. We are able to extract from the first part of the information "that *John Bernhardt*, with a club," etc., "inflicted a mortal wound upon the body," etc., "of one Henry Schley, with a premeditated design to effect the death of said Henry Schley, from which mortal wound he did die;" and from the last part of the information, "that *John Bernhardt*, from premeditated design to effect the death of Henry Schley, did the said Henry Schley feloniously slay, kill, and murder." The crime is twice charged in the information in the language of the statute. These statements of the crime are not modified or qualified by the context of redundant matter with which the information abounds. No other crime or grade of murder is charged by any appropriate language. If the redundant matter and surplusage were stricken out, there would remain at least one good information for murder in the first degree.

2. That the defendant's request to charge the jury on the subject of murder in the third degree should have been given, and that given by the court was error. The court instructed the jury as to the various degrees of homicide in the language of the statute, and that is sufficient. *Rounds v. State*, 57 Wis. 45.

3. That the court refused to give the instruction asked by the defendant on the question what effect the drunkenness of the defendant should have upon the crime. The

instruction given and that asked are substantially alike, the only difference being that the instruction given is more direct and specific than that asked. The instruction asked is: "If you have a reasonable doubt whether at the time of the killing the defendant had sufficient capacity *to deliberately think upon and rationally to determine* so to kill, you cannot find him guilty of murder in the first degree, although such inability was the result of intemperance." The instruction given was: "If you shall find from the evidence in the case that this defendant, at the time he struck the blow, was in such a condition from the use of spirituous liquors that he was incapable of forming an intent to kill; then you may consider the question of intoxication. The question simply is, in short, Was he at the time in such a condition mentally as to be incapable of forming this premeditated design to effect the death?" etc. This instruction is direct, clear, and to the point, and the jury could understand it. The point is, was he so intoxicated that he could not form the intent or the premeditated design to kill? The instruction asked is loose, indirect, and obscure, and it improperly uses the word " capacity " for " condition," and the words " deliberately to think " and " rationally determine " for " intent." The instruction given was strictly correct. *Terrill v. State*, 74 Wis. 278; *People v. Rogers*, 18 N. Y. 9. The instruction given is more favorable to the defendant, as the word " capacity " might have been understood by the jury as indicating the *permanent* loss of ability to form an intent by a long course of intemperance, when the defendant should have the benefit of that condition produced temporarily by being drunk at the time, in which he was unable to form an intent. There is great danger in departing from the use of strict legal language in instructing the jury on such a question, as if something else would answer as well or better than the clear expression of a principle found in the books.

4. That the court instructed the jury wrongly in answer to the request to charge that the previous good character of the accused was proper to be considered by the jury in determining whether he intended to kill Schley. Here again the court instructed the jury more favorably for the defendant than requested. The instruction asked was only that good character was only proper to be considered in determining whether the defendant killed Schley. The instruction given was that the jury might consider that fact in this case, but that it would have more weight in a doubtful case than when the evidence is clear and positive, in determining whether the defendant killed Schley, or any other doubtful question. Such fact is not to raise doubts, when the evidence is clear and positive, and there is no doubt on the facts, but, as said in *Hogan v. State*, 36 Wis. 226, "*to solve doubts* of proof."

5. That the court gave undue prominence in the instructions to murder in the first degree. The court should have given prominence to that degree of homicide, because that was the crime charged in the information, and for which the defendant was tried, and the evidence tended to prove it. But this is not assigned as an error. It is rather an unwarranted criticism. Who shall say just how much prominence the court ought to have given to this main question in the case? This court could not say how much, or undertake to decide such a question.

6. That the court erred in not instructing the jury on the subjects of confession, as requested. This does not mean that the court should have given any particular instructions on that subject, for no such were asked. The confession of the defendant was not disputed, or its meaning. There was no necessity of calling the attention of the jury to it, for it was not likely that they would forget it. It is not apparent that there was any necessity for the court to instruct the jury on the subject. To predicate error on such

Bernhardt vs. The State.

refusal, it should appear that it was either necessary, or that it was the duty of the court, to instruct the jury on that subject; and it does not so appear.

7. That the court should have instructed the jury that a verdict of guilty of murder in the first degree could not have been rendered, as requested. There was, at least, much evidence tending to show that the defendant was guilty of the crime charged. That being so, the court had no right to so instruct the jury.

8. That the court should have set aside the verdict and granted a new trial for the foregoing reasons and for the misconduct of the jury. The foregoing reasons have been disposed of. The misconduct of the jury consisted in having in their possession the Revised Statutes, and reading therefrom the provisions concerning murder in its several degrees and the penalties thereof, and in discussing their verdict in connection with said provisions. It is said that this was without the knowledge or consent of the court. This may not have been strictly proper, but we know of no principle or practice by which it was such an error, if any, as should cause a reversal of the judgment.

This case seems to have been tried by able counsel, and before a very able judge, who also denied the motion for a new trial, and the evidence would seem to justify the verdict. We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.